1. WILLS—CONSTRUCTION—TIME FROM WHICH WILL SPEAKS.

The rule that a will speaks from the death of the testator applies only so far as the facts and circumstances are susceptible of anticipation by the testator, so that he can place himself in the position he will be at the time of his death in respect to his property and family.

2. SAME.

A will provided that, on the death of testator's widow, one-fourth of his residuary estate should pass to each of his three sons, and that, "if either of my sons shall die before my wife, his share shall go to his children, and in default of children, to my surviving children and the children of such of them as may be dead, in equal shares." *Held,* that where one of testator's children died before the widow, leaving no natural children, but leaving a child adopted by him after the will was executed, and prior to testator's death, the adopted child was not entitled to the share of the residuary estate which her adopted father would have taken if he had survived testator's widow.

Proceedings upon the final judicial settlement of the accounts of John Hopkins and another as trustees of the estate of William H. Hopkins, deceased.

Hackett & Williams, for executors.

Allison Butts, for Harriet Titus and others.

Noble, Jackson & Hubbard (Gordon Gordon, of counsel), for Charlotte Strong Seixas.

HOYSRADT, S.　By the third clause of his will, William H. Hopkins directed his executors to invest his residuary estate, pay the income to his widow, Jemima Hopkins, for life, and at her decease to divide the principal into four equal parts, three of which are given to the testator's three sons, and the other directed to be held in trust for a daughter.　The will also provides:

"If either of my sons shall die before my wife, his share shall go to his children, and in default of children, to my surviving children and the children of such of them as may be dead, in equal shares, so that the children of one of my deceased sons or daughter shall take the same part as their parent would if living."

This will was executed November 27, 1888.　The testator died May 22, 1890. · The will was admitted to probate June 7, 1890.　Elias Hopkins, one of the testator's sons, died April 4, 1903, and Jemima Hopkins, the testator's widow, died December 4, 1903.

Elias Hopkins left no natural children, but it now appears that he legally adopted Charlotte Strong Field as a daughter, November 17, 1889; and she has made a claim, on the final accounting of the executors of William H. Hopkins, to one-fourth of the remainder which Elias Hopkins would have received. had he survived his mother.

As the question involves a construction of the residuary clause of the will, an effort has been made to establish that the testator intended that the adopted child of Elias Hopkins should take, under the rule that the will speaks from the death of the testator, which occurred subsequent to the adoption. But it is only so far as facts and circumstances are susceptible of anticipation by the testator, so that he can place himself in the position which he will be at the time of his death relatively to his property and family, that he is presumed to speak from that time. A construction which would declare that he intended to include this child who was adopted after the will was executed, and which also tends to partially defeat the rights of the testator's own children, certainly cannot be favored.

From the time of the enactment of chapter 830, p. 1243, of the Laws of 1873, the original legislation in this state on the subject of adoption, to the present, there has been no material change in the provision which expressly declares "that in the passing and limitation over of real and personal property * * * dependent upon the person adopting dying without heirs, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting so as to defeat the rights of remaindermen." The purpose of this provision, which is plainly to prevent the defeat of testamentary disposition by supplying children through adoption, cannot be affected by a construction of the whole section in reference to inheritance, to defeat the plain intent of the Legislature to preserve rights of remaindermen, subject to be divested only as the testator or grantee willed. Upon this point the time of adoption should not control. It is not necessary that the remaindermen should become vested before the adoption. In the case at bar, as we now read the will, the testator gave one-fourth of the remainder to his son Elias, and, if he (Elias) died without children before the termination of the life estate, then his share would pass to his surviving brothers and sister. I regard it as of no materiality how long the child had been adopted. The statute says she shall not be deemed a child, so as to defeat rights of remaindermen, and there is no indication of any limitation within which the conflict shall happen. In my opinion, it neither harms nor benefits her case that she was adopted before the remaindermen became vested. She seeks to take what would have been theirs without contest, had she not been adopted. This is what the statute plainly designs to prevent. In the case of New York Life Insurance & Trust Co. v. Viele, 161 N. Y. 11, 55 N. E. 311, 76 Am. St. Rep. 238, which involved the construction of the will of Mary Griffin, on the distribution of the estate, the testatrix established a trust fund for the benefit of her daughter for life, and, at her decease, directed the principal be paid to the daughter's then living lawful issue. The daughter left no natural children, and the court was called upon to determine whether an adopted daughter came within the term "lawful living issue," and whether she could take the remainder. This daughter was adopted in a foreign country, but the court did not question her legal status. The conclusion is then reached that the term "lawful living issue" does not include children by adoption, and that the testatrix did not intend that the

daughter's adopted child should take. In this same will the claim of the adopted daughter conflicted with the rights of 10 grandchildren, which accrued after the adoption; i. e., on the death of the daughter of the testatrix without issue.

After further convincing reasoning on page 22, 161 N. Y., page 315, 55 N. E., peculiarly applicable to the case at bar, the court says:

"Moreover, if Olga had been adopted under the statutes of this state, she would be precluded from taking anything under this will by the express words of the law regulating domestic relations (section 64), and the same result would follow under the decisions of the courts in cases quite analogous."

Section 64 of the domestic relations law (Laws 1897, p. 333, c. 408) is a re-enactment of the original adoption law of 1873 as amended. I am asked to regard this as dicta of the court, as the point was not specifically raised as to the status of the daughter, had she been adopted in New York. It is unimportant whether it is regarded as dicta or not, as it certainly expresses the law as I read it.

The claim of Charlotte Strong Seixas is therefore disallowed.

Decreed accordingly.