Nickerson *v.* Hoover, Admr.—70 Ind. App. 343.

## NICKERSON ET AL. *v.* HOOVER, ADMINISTRATOR, ET AL.

[No. 9,829.  Filed March 28, 1917.  Rehearing denied June 29, 1917.
Transfer denied June 3, 1919.]

1. DESCENT AND DISTRIBUTION.—*Heirs.*—In its strict legal or technical sense, the word heirs refers to those on whom the law casts the inheritance in the absence of a will.  p. 350.

2. WILLS. — *Construction.* — *Use of Words.* — *Heirs.* — The word "heirs," as used in a will may signify those who take by its terms. p. 350.

3. WILLS.—*Construction.—Technical Terms.—Testator's Meaning.*— Where, by a proceeding within the rules that govern in such cases, the meaning that testator assigned to the term "heirs," as used by him in an item of his will, has been clearly ascertained, effect must be given to it as so used, even though such meaning is different from its legal or technical meaning.  p. 350.

4. WILLS.—*Construction.—Use of Words.*—In determining the sense in which a testator uses a term in his will, other portions of the instrument may be examined.  p. 350.

5. WILLS.—*Construction.—Use of Words.—Extrinsic Circumstances.* —In determining the sense in which a testator used a word in his will, the court will look at the circumtsances under which the will was made, as the state of testator's family or his property, and the like.  p. 350.

6. WILLS.—*Construction.—Heirs.*—The word "heir," as used in an item of a will stipulating that testator's daughter have thirty acres of land "provided she have heirs, if not, then at her death I wish," her husband "to hold the same until his death if he survives her," etc., *held* to have been used in the sense of "children," in view of the fact that, wherever testator used the word "heirs" elsewhere in the will, he used it with the force and significance of children, and that, when the will was drawn, and at the time of testator's death, the daughter had a number of heirs, using the term as referring to persons capable of inheriting from her at her decease.  p. 350.

7. WILLS.—*Construction.—Devise.—Fee Simple. — Devise Over. — Vesting.*—Where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in case of the death of such primary devisee without children or issue, the condition refers to a death without children or issue within the lifetime of the testator, and, if the primary devisee survives the testator he takes at the latter's death an estate in fee simple.  p. 352.

8. WILLS.—*Construction.—Devise in General Terms.—Estate Created.*—Where a devise is in general terms, unaccompanied by words of inheritance or other language defining or indicating the quantity of estate to be taken by the devisee, only a life estate is thereby created. p. 353.

9. WILLS.—*Construction.—Devise of Land.—Creation of Life Estate.—Condition Precedent.*—Where testator's will devised thirty acres of land to his daughter "forever provided she have heirs, if not then at her death" providing a remainder over, the will created a life estate in the daughter capable, on the condition that she have children, of being enlarged into a fee, such condition being precedent rather than subsequent, as a condition precedent is an event, the happening or not happening of which causes a conditional estate to vest or be enlarged. pp. 353, 356.

10. WILLS.—*Construction.—Devise on Condition.—Intent of Testator.*—The rule that a condition annexed to a devise in fee respecting devisee's death without children or issue ordinarily refers to the period terminating with the death of the testator is one of construction only, and yields readily to the intent of the testator. p. 355.

11. ADOPTION.—*Adopted Child's Right of Inheritance.*—An adopted child has the right to inherit from the adopting parent any estate of which the latter dies the owner. p. 356.

12. WILLS. — *Construction. — Heirs. — Adopted Child.—"Have."*— Where an item of a will stipulated that testator's daughter "have thirty acres of ground * * * forever provided she have heirs," the term "heirs" being used in the sense of children, *held* that, viewing the entire will in the light of surrounding circumstances, testator, by the phrase "provided she have heirs," meant provided children should be born to her, and the condition was not satisfied by the daughter's adoption of a child pursuant to §868 *et seq.* Burns 1914, §823 *et seq.* R. S. 1881, the word "have," as used in the provision that the daughter should have thirty acres meaning to possess or to acquire, and, as used in the proviso, meaning to bear. p. 357.

13. APPEAL.—*Review.—Scope.—Point not made in Original Brief.*— The court on appeal should not be required to consider a point not made in appellee's original brief. p. 362.

From Marion Probate Court; *Mahlon E. Bash,* Judge.

Petition for an order for the sale of realty by Charlie Hoover, administrator *de bonis non* with the

will annexed, of the estate of Andrew Hoover, deceased, and others, against Cora May Nickerson and others. From a decree directing the sale of the land and a distribution of the proceeds as prayed, the defendants appeal. *Affirmed.*

*Harvey & Harvey, Elmer E. Stevenson* and *Thomas D. Stevenson,* for appellants.

*Kealing & Hugg, Enos W. Hoover* and *Smith, Remster, Hornbrook & Smith,* for appellees.

CALDWELL, J.—The following facts are disclosed by the record: November 25, 1863, Andrew Hoover died testate in Marion county, the owner of an estate therein, consisting of both real and personal property, and including a certain thirty-acre tract of land hereinafter described. June 1, 1859, he executed a will, which was changed somewhat, as hereinafter indicated, and re-executed February 13, 1862. The will after his decease was duly probated as re-executed. The parties agree that a proper construction of the will, and especially of the ninth item thereof, determines this appeal. That item is as follows:

"It is my will that Sarah J. Charles have thirty (30) acres of grounds described as follows, to-wit: A strip off of the south side of the north one-half of the northwest quarter of section twenty (20) township fifteen (15) range three (3) east and not included in the deed made to Jacob Hoover of fifty (50) acres on the north side of said half quarter section, be the same more or less, forever provided she have heirs, if not then at her death, I wish Jacob Charles to hold the same until his death if he survives her, and then I wish said land to be taken by my execu-

tors and disposed of as the ten acres of the south of my farm are to be divided as directed in this my will, excepting that I will that of the funds arising from said thirty (30) acres my executors shall pay Jacob Charles the sum of $100.00 before dividing the same amongst other heirs.''

After the first execution of the will, and prior to its re-execution, the testator added to the ninth item, by interlineation, the provision:

''I wish Jacob Charles to hold the same until his death if he survives her and then.''

It will be observed that by the ninth item a direction found in some other part of the will with reference to disposing of a ten-acre tract was applied conditionally to the thirty acres also. The provisions of the will directing a disposition of the ten-acre tract, and which affect also the thirty-acre tract are found in the seventh and eighth items of the will, which are as follows:

''7th.   The remaining strip of land on the south side of said farm ten (10) rods wide I will to be sold by my executors as soon as convenient and proper and so as to realize the best price in the judgment of said executors, and the funds arising therefrom, together with what may arise from the sale of certain thirty (30) acres of ground hereinafter given conditionally to S. Jane Charles, my daughter, to be equally divided between my heirs, Hannah Cossell, Mary A. Wright, Daniel Hoover and Alexander W. Hoover, excepting what of said sum or funds I have herein given to the heirs of George Hoover,

my son, hereinafter named, and to George, my son.

"8th. It is my will that of my grandchildren, the children of my son, George Hoover, and my son, George Hoover, have of said fund before dividing between the four heirs above named, the following sums, to wit: To George, my son, the sum of fifty ($50.00) dollars, to George T. Hoover, my grandson, the sum of $100.00 and to Erastus Hoover, my grandson, the sum of $100.00, and should the thirty (30) acres above named ever be sold and divided as contemplated in the 7th item of this will, then the following named persons, my grandchildren, to have, before dividing with the four heirs named in item seven, each the sum of $100.00 namely: George W. T. Hoover, above named, $100.00, Erastus Hoover, above named, $100.00, and Willie E. M. Hoover, my grandson, the sum of $100.00, making to the two first named in all $200.00 each, to the last named one the sum in all $100.00, and to George Hoover, my son, $50.00."

Prior to the first execution of the will the following sons and daughters had been born to testator and his wife, Sarah Hoover: Carey S., Percy S., Jacob, Daniel and Alexander W. Hoover, Mary A. Wright, Hannah Cossell and Sarah J. Charles, the latter designated in the will also as S. Jane Charles. The widow and each of the children survived testator. Each of said children was married prior to the execution of the will, and to each, except Sarah J. Charles, children had been born, which children were living at the time of the execution of the will, at the time of its second execution, and also at the decease

of testator. Sarah J. Charles was born in 1829, mar-
ried to Jacob Charles in 1850, and died in 1914. Jacob
Charles died in 1890. After the decease of Andrew
Hoover and the probate of his will Sarah J. Charles
entered into possession of the thirty-acre tract of
land, and continued in such possession until her de-
cease, at which time she was about eighty-five years
old. In 1911, by proceedings under the provisions of
§868 *et seq.* Burns 1914, §833 *et seq.* R. S. 1881, the
regularity of which are not questioned, she adopted
appellant Cora May Nickerson, whose maiden name
was Dell, as her child and heir. Cora May Nickerson
was born in 1872, and in 1889 was married to her
coappellant, Arthur S. Nickerson. Cora May Nicker-
son claims to be the owner of said tract as the heir
of Sarah J. Charles by virtue of said adoption, and
not otherwise. After the decease of Sarah J. Charles,
appellee Charlie Hoover, as administrator *de bonis
non* with the will annexed of the estate of Andrew
Hoover, proceeding under the will as interpreted by
him, filed a petition to procure an order for the sale
of the thirty-acre tract of land and a distribution of
the proceeds as contemplated by the seventh, eighth
and ninth items of the will under certain circum-
stances. Cora May Nickerson and her husband were
named as defendants. Other proper defendants were
also named. The cause having been placed at issue,
a trial by the court resulted in a decree directing the
sale of the land and a distribution of the proceeds as
prayed. Appellant Cora May Nickerson was decreed
no relief other than the payment to her, as heir of
Sarah J. Charles, of the $100 legacy bequeathed to
the husband of the latter by the ninth item of the will,
Sarah J. Charles on the decease of her husband hav-
ing inherited from him the right to such sum.

Error is assigned by Cora May Nickerson and her husband on the sustaining of a demurrer to certain answers filed by them, and to a cross-complaint filed by the former, and also on the overruling of their joint and several motion for a new trial by which they challenged the sufficiency of the evidence. The pleadings to which demurrers were sustained, and also the evidence, disclosed, among other things, that at the time of the execution of the will, the time of the decease of the testator, and at all times thereafter, there were nephews and nieces of Sarah J. Charles and also other of her relatives capable of inheriting from her, and also the facts respecting the adoption of Cora May Nickerson. The points made by appellants under the assignments of error based on said rulings present for our consideration two questions: First, by the ninth item of the will did Sarah J. Charles, at the death of testator, take a fee-simple estate in the lands involved? Second, if, by the terms of said item, Sarah J. Charles at the decease of the testator took a conditional fee or a fee on condition rather than a fee simple, did the existence of nephews and nieces and others capable of inheriting from her, or the fact of such adoption, fulfill the condition so that such estate less in quantity than an unqualified fee ripened into an absolute fee? In order that the judgment may be affirmed, both questions must be answered in the negative. We proceed to construe the ninth item of the will, and first as to the significance of the word ''heirs'' as used in connection with the devise to Sarah J. Charles.

In its strict legal or technical sense, such word has reference to those on whom the law casts the inherit-

ance, in the absence of a will. *Granger* v. *Granger* (1897), 147 Ind. 95, 44 N. E. 189, 46 N. E. 80, 36 L. R. A. 186. As used in a will, it may signify those who take by its terms. *Eisman* v. *Poindexter* (1876), 52 Ind. 401; *Hoke* v. *Jackman* (1914), 182 Ind. 536, 107 N. E. 65. The testator in using such term in his will had a right to assign to it a meaning other than its technical meaning, as devisees, children, or the like. Where by proceeding within the rules that govern in such cases the meaning that testator assigned to such term as used by him in the item under consideration has been clearly ascertained, effect must be given to it as so used, even though such meaning is different from its legal or technical meaning. *Ridgeway* v. *Lanphear* (1885), 99 Ind. 251. To determine the sense in which testator used such term, other portions of the will may be examined. *Hoke* v. *Jackman, supra.* Also, "the court will look at the circumstances under which the devisor makes his will, * * * as the state of his property or his family, and the like." 2 Jarman, Wills (6th ed.) 771; *Skinner* v. *Spann* (1911), 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243.

We proceed to examine other portions of the will: The word "heirs" is used five times in the will in addition to its use in the ninth item. Thus in the third item there is a provision by which, subject to a life estate in the widow, a farm owned by testator is devised to "my heirs, Carey S. Hoover, Percy C. Hoover, and Jacob Hoover" each of whom was a child of testator. In the seventh item the term "my heirs" is used where the reference is to certain of his children. The seventh item contains

also the expression "the heirs of George Hoover." The eighth item discloses that by such phrase testator meant George Hoover's children. The word "heirs" is used twice in the eighth item, in each case plainly signifying testator's children. It is used in a like sense in the fourteenth item. From an examination of the entire will it seems to us apparent that the term "heirs," as used in connection with the devise to Sarah J. Charles, has the force and significance of children; that the ninth item should be interpreted as if it read that it was testator's will that Sarah J. Charles have the lands involved "forever if she have children, but that if she does not have children, then at her death," etc. Looking to the circumstances under which the will was written, we are confirmed in this conclusion. Thus at the time when the will was executed, and also at the decease of testator, Sarah J. Charles had a number of heirs, using the term in its sense as referring to persons capable of inheriting from her at her decease. There was no probability that heirs would fail her, assigning to the term its meaning aforesaid. This being true, we are at a loss to discover any reason why the testator should encumber the devise to her with the condition indicated by the language used, if to the word "heirs" must be assigned its technical meaning. Moreover, prior to the execution of the will, children had been born to each of testator's sons and daughters other than Sarah J. Charles, which children were living when the will was made and also at testator's death. He devised or bequeathed to each son and daughter other than Sarah J. Charles an absolute estate or interest in the property given without limitation, qualification, or condition. Sarah J. Charles had been

married a number of years, but no children had been
born to her. The absence of children was the sole
distinction between her status and that of her broth-
ers and sisters. It is therefore reasonable to con-
clude that such distinction in status formed the basis
of the condition annexed to the estate devised to
Sarah J. Charles, and omitted from provisions made
in favor of her brothers and sisters, and therefore
that the testator used the term "heirs" as signifying
children.

On the assumption that the word "heirs" should
be interpreted as indicated, appellant argues that nev-
ertheless Sarah J. Charles at the death of tes-
tator took an estate in fee simple in the lands
involved. Appellant points to the principle
that, where real estate is devised in terms denoting
an intention that the primary devisee shall take a fee
on the death of the testator, coupled with a devise
over in case of the death of such primary devisee
without children or issue, the condition refers to a
death without children or issue within the lifetime of
the testator, and that, if the primary devisee survives
the testator, he takes at the latter's death an estate in
fee simple. Appellant cites *Fowler* v. *Duhme* (1896),
143 Ind. 248, 42 N. E. 623, and like cases. The prin-
ciple referred to is thoroughly settled, but it remains
to be determined whether it is applicable here. The
language here, substituting children for heirs, is as
follows:, "It is my will that Sarah J. Charles have
thirty (30) acres of ground * * *, forever pro-
vided she have children, if not then at her death,"
etc. In order that such principle may be applicable,
it must first appear that the language used by the
testator imports a fee. The provision, "It is my will

that Sarah J. Charles have thirty acres of ground,''
is general in nature. Where the devise is in

8. general terms, unaccompanied by words of inheritance or other language defining or indicating the quantity of estate to be taken by the devisee, the common-law rule that only a life estate is thereby created is in force in this state. *Gibson* v. *Brown* (1916), 62 Ind. App. 460, 110 N. E. 716, 112 N. E. 894; *Keplinger* v. *Keplinger* (1916), 185 Ind. 81, 113 N. E. 292. The language quoted then, if unaided, imports but a life estate.

The word ''forever,'' considered with the quoted language and disassociated from what follows, is
sufficient to create a fee. Page, Wills §561;

9. 2 Jarman, Wills (6th ed.) 284. The full expression, however, is: ''It is my will that Sarah J. Charles have thirty (30) acres of ground * * *, forever provided she have heirs (children), if not (that is, if she does not have children) then at her death'' remainder over as expressed by the item. It is apparent that the ninth item of the will created in Sarah J. Charles at least a life estate in the lands involved. The language by which the testator expressed an intent that she have the land, and that at her death it should go to others, is sufficient to that end. If an estate greater in quantity than a life estate was created in her, it was by virtue of the language ''forever provided she have heirs.'' We have indicated that the word ''forever'' added to what precedes it was sufficient to create a fee. The relation between the word ''forever,'' however, and what follows it is more intimate than the relation between the word and what precedes it. The thought conveyed to our minds by the language used is not

that she should have the land forever, but rather forever if she have heirs; not "have forever," but "forever provided"; that she should have the land, and that it should be hers forever provided she have heirs. It would seem that the more reasonable interpretation of the language is that it created a life estate capable on a certain condition of being enlarged into a fee. The condition was that Sarah J. Charles have children. It would seem, therefore, that the condition was precedent rather than subsequent. A condition precedent is an event, the happening or not happening of which causes a conditional estate to vest or to be enlarged. Page, Wills §672; 10 R. C. L. 664. Since the condition was annexed to the life estate, and by its fulfilment such lesser estate might be enlarged into a fee, the estate created is a fee upon condition, rather than a defeasible fee. 40 Cyc 1589, 1593. That such was the intent of the testator seems to be indicated also by the seventh item of the will, wherein is recited that the land was "hereinafter given conditionally to S. Jane Charles." This language does not import a gift liable to be defeated for condition broken, but rather that the question of whether the subject-matter of the devise became effective as such depended on a condition. As having a bearing, see the following: *Essick* v. *Caple* (1892), 131 Ind. 207, 30 N. E. 900; *Clark* v. *Barton* (1875), 51 Ind. 165; *Shimer* v. *Mann* (1885), 99 Ind. 190, 198, 50 Am. Rep. 82. Appellants interpret the ninth item as if it read in effect as follows: "I give this land to my daughter forever, but if she does not have children," etc. It in fact reads to the following effect: "I give this land to my daughter, forever if she have children; if she does not have children" then over as

in the item. As we interpret the second conditional clause, it does not signify a condition on the failure to fulfill which an estate in fee theretofore created will determine, but rather that it is introductory to the disposition of the remainder over in case a life estate theretofore created fails to ripen into a fee. But if we should be in error respecting the quantity of the estate created in Sarah J. Charles, it is plain that such estate involves a condition. If such condition should be held to be a condition subsequent, the nonfulfilment of which would determine an estate in fee by said item created, still such condition does not deal primarily with the subject of death without children, but rather with the subject of the birth of children. The birth of children, rather than the death of the devisee, was evidently foremost in testator's mind. Respecting a condition dependent on the birth of children, the following is said: "Such a condition is usually held not to be broken until the death of the person indicated by the condition as the parent of prospective issue, * * *. The fact that it is extremely improbable, or in fact impossible, as where the woman who is indicated as the mother of the issue is past the age of child bearing, does not amount to a breach of the condition." Page, Wills §677. The author, however, in the same section cites *In re Lowman* (C. A.) 2 Chan. 348, that such a condition is broken by the woman involved having passed the child-bearing age, no child having been born to her.

Moreover, the rule for which appellant contends—that is, that a condition respecting death without children or issue annexed to a devise in fee ordinarily refers to the period terminating with the death of the testator—is one of construc-

tion only, and yields readily to the intent of the testator. *Curry* v. *Curry* (1915), 58 Ind. App. 567, 581, 105 N. E. 951. Here, when the will was finally executed, testator was about seventy-five years of age. His lease on life was presumably short. He died in less than two years. Sarah J. Charles was about thirty years of age when the will was executed. If it should be conceded that, in creating in Sarah J. Charles an estate affected by a condition subsequent rather than precedent, as indicated, the thought prominent in testator's mind was death without children rather than the birth of children, it is not reasonably conceivable that he intended to limit the time granted for the occurring of the event on which such condition was predicated to the remaining days of his life. We conclude that at the death of testator, no child having been born to Sarah J. Charles, she did not take an estate in fee simple in the lands involved, but that her estate in such lands remained affected by the stipulated condition.

We proceed to a consideration of the question whether the adoption of Cora May Nickerson by Sarah J. Charles satisfied the condition described for the vesting of an estate in fee in the lands involved, if such condition be deemed to be a condition precedent, or prevented a breach of such condition if it should be considered a condition subsequent. It is well to keep in mind that we are not dealing here with the right of Cora May Nickerson as an adopted child to inherit from Sarah J. Charles any estate of which the latter died the owner. Such right cannot be doubted. If Sarah J. Charles were seized in fee of the lands involved, Cora May Nickerson, by virtue of the status created by such

adoption, inherited the lands at the decease of her adopting mother. The question here is whether, by virtue of such adoption, the condition annexed to the devise of Sarah J. Charles was satisfied, and thereby ceased to exist as a condition, and so that as a consequence she owned the land in fee at her decease.

Since 1855 the following statutes bearing on the status of an adopted child have been in force: "Such court, when satisfied that it will be for the interest of such child, shall make an order that such child be adopted, and from and after the adoption of such child it shall take the name in which it is adopted and be entitled to and receive all the rights and interests in the estate of such adopting father or mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother." §870 Burns 1914, Acts 1883 p. 61. "After the adoption of such child, such adopted father or mother shall occupy the same position toward such child that he or she would if the natural father or mother, and be liable for the maintenance, education and every other way responsible as a natural father or mother." §871 Burns 1914, §826 R. S. 1881. Respecting such status and the relation of an adopted child to an adopting parent, it is said in substance in *Barnes* v. *Allen* (1865), 25 Ind. 222, that the adopted child is entitled to inherit from his adopting parent as his heir in the degree of a child, and in *Barnhizel* v. *Ferrell* (1874), 47 Ind. 335, 338, the following: "The act does not provide that he shall be the child of the adopting parent, but he shall take the name, and be entitled to take his property by descent or otherwise, the same as he would if he was his child or natural heir, and the adopting parent shall

occupy the position toward the child of a father or mother, and be liable in every way as such. In *Schafer* v. *Eneu*, 54 Penn. St. 304, it is said: 'The right to inherit from the adopting parent is made complete, but the identity of the child is not changed; one adopted has the rights of a child without being a child.' And in *Commonwealth* v. *Nancrede*, 32 Penn. St. 389, the same court said: 'Giving an adopted son a right to inherit, does not make him a son in fact. And he is so regarded in law, only to give the right to inherit.' '' For decisions somewhat conflicting respecting the legal status of an adopted child, see note to *Warren* v. *Prescott* (1892), 17 L. R. A. 435, and for decisions on the subject of whether an adopted child is included within the meaning of the term ''child,'' as used in the statutes governing distribution of estates of decedents, see note to *Morse* v. *Osborne* (1910), 30 L. R. A. (N. S.) 914.

Here the will, as we have construed it, is to the effect that Sarah J. Charles should have the land forever if she have children, etc. Our problem is to determine the intent of the testator as gathered from the will, and as illuminated by such surrounding and attending circumstances as may properly be considered. Was it within the intent of the testator that the term ''heirs,'' interpreted by us to mean ''children,'' as used in the ninth item in connection with the devise to Sarah J. Charles, should include a child adopted by Sarah J. Charles after his decease? There seems to be a very great conflict among the decisions on the subject of whether the term ''heirs'' or ''children,'' as used in wills in relations similar to those involved here, include adopted children. See the following: *Matter of Hopkins* (1904), 43 Misc. Rep. 464, 89 N. Y.

Supp. 467; *Wyeth* v. *Stone* (1887), 144 Mass. 441, 11 N. E. 729; *Russell* v. *Russell* (1887), 84 Ala. 48, 3 South. 900; *Lichter* v. *Thiers* (1909), 139 Wis. 481, 121 N. W. 153; *Cochran* v. *Cochran* (1906), 43 Tex. Civ. App. 259, 95 S. W. 731; *Schafer* v. *Eneu, supra; In re Leask* (1910), 197 N. Y. 193, 90 N. E. 652, 27 L. R. A. (N. S.) 1158, and note, 134 Am. St. 866, 18 Ann. Cas. 516; *New York Ins., etc., Co.* v. *Viele* (1899), 161 N. Y. 11, 55 N. E. 311, 76 Am. St. 238; *Eureka Life Ins. Co.* v. *Geis* (1913), 121 Md. 196, 88 Atl. 158; *In re Truman* (1905), 27 R. I. 209, 61 Atl. 598.

It will be observed that, as the decision in each case is based upon a will with its own peculiar provisions, and that statutes by no means uniform are involved, the conflict is to an extent apparent rather than real. An examination of the decided cases will disclose also that force is given to certain extraneous circumstances, as whether the testator knew that his devisee had adopted a child; whether the adoption preceded his death; whether the adopted child was a stranger to the blood of the testator, and the like. It follows that to an extent each case must be determined from a consideration of the circumstances which it involves, including the language of the will before the court for construction. Among the attending circumstances that may be considered here are the following: Testator by his will manifested a disposition to make provisions for those related to him by ties of consanguinity. The great bulk of his estate was devised and bequeathed to sons and daughters and to their natural children. In the case of each son and daughter, other than Sarah J. Charles, children having been born to them, he devised in fee and bequeathed by absolute title; but in the case of Sarah

J. Charles, to whom no children had been born, he was careful not to devise in fee, but safeguarded the fee of the involved estate so that, if she did not have heirs or children, it should return to the channels of his natural descendants. At the decease of the testator Sarah J. Charles had adopted no child. Cora May Nickerson was born years after the testator's death. She was adopted in the years of her maturity and when Sarah J. Charles was a very aged woman. Cora May Nickerson was a stranger to the blood of testator. Our statute concerning the adoption of children was enacted shortly before the execution of the will involved, and less than two years before the testator's death. It had not been construed by the courts. It is only in a qualified and limited sense that all men are presumed to know the law. Broom, Legal Maxims (8th ed.) §253. As a practical proposition, there is room to doubt whether testator had any knowledge of the existence of the statute providing for the adoption of children. These facts and circumstances are worthy of consideration in arriving at testator's intent, expressed by the language of the will. Such language is: "It is my will that Sarah J. Charles have thirty (30) acres *  *  *, forever provided she have heirs" (children). Possibly, the word "have" is a key to the situation. As a principal verb it is a word of comprehensive meaning. It is sometimes used in the sense of "to possess" or "to acquire," and the like. Such is its meaning in the early part of the language quoted—that she have thirty acres. In *Horton* v. *McCall* (1911), 233 Pa. 405, 82 Atl. 472, the phrase "if W has no heirs" was involved, and it was held that the phrase meant "if W should die without issue." In *Bryson* v. *David-*

*son's Exr.* (1806), 5 N. C. 143, there was a devise to testator's childless daughter, expressed in part by the clause "if the said Mary Long Davidson dies without having issue." The court held that the word "having" included the idea of giving birth to issue. Such decisions, however, are not strictly in point as no question of adoption was involved. There is no doubt that the word "have" in its relation to children is frequently used in the sense of "to possess." It is also used in the sense of "to bear." Webster's International Dictionary. Popularly, there is no doubt that it is frequently used in the latter sense. The will bears on its face abundant evidence that it was not prepared by one skilled in the use of the formal language of the law. It is couched in terms colloquial and somewhat loose rather than technical and exact. Viewing the entire will in the light of surrounding circumstances, it is our judgment that testator used the word here as including the meaning last indicated; that by the phrase "provided she have heirs," testator meant "provided children should be born to her." It is not necessary that we determine here whether such phrase includes also the survival of such children, as none were born.

On first view *Bray* v. *Miles* (1899), 23 Ind. App. 432, 54 N. E. 446, 55 N. E. 510, would seem to be in conflict with the conclusion at which we have arrived. The language of the will involved there and the attending circumstances, however, fairly distinguish that case from the case at bar. Among such circumstances may be mentioned the fact, to which some force is given in the opinion, that the child involved had been adopted by testator's daughter with his knowledge some time prior to testator's death.

Appellees have filed as an additional authority, *Bartholow* v. *Davies* (1917), 276 Ill. 505, 114 N. E. 1017. Appellees desire that this decision be considered in support of the proposition alleged to be contained in their original brief, and specifically to the effect that the adoption of Cora May Nickerson was invalid because at the time of her adoption she was an adult. It is appellees' contention that only minors may be adopted under our statute. As this specific point was not made in appellees' original brief, we should not be required to consider it. It is apparent from the opinion in this case that we have not found it necessary to determine the question thus tardily presented by appellees. However, the Supreme Court of this state in *Markover* v. *Krauss* (1892), 132 Ind. 294, 31 N. E. 1047, 17 L. R. A. 806, uses the following language: "The statute, unlike the statutes of many of the states, contains no provision fixing or limiting the age at which heirs may be adopted. We can see no reason why its provisions may not apply to adults equally with infants." That such was the legislative view of our statute is indicated by the amendment of 1913 (Acts 1913 p. 408, §872 Burns 1914), whereby provision is made to the effect that, if the child is under twenty-one years of age, it may not be adopted without the consent of the father or mother thereto. Such language would seem to indicate that a child over the age of twenty-one years may be adopted.

The judgment is affirmed.