## Ellison et al. v. Smoot's Adm'r et al.

May 27, 1941.

Richardson & Redford for appellants.

Paul Greer for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

Two primary questions before us are unrelated except that they both involve the devolution of title to some of the same property and its distribution as between the same parties. One is the construction of the will of Mrs. Dona B. McQuown. The other pertains to a letter probated as the will of one of her devisees, Mrs. Mary E. Lucas.

I. Other than a preamble, Mrs. McQuown's will is as follows:

> "I bequeath to my dear husband, Lewis McQuown, all of my property, both real and personal for life, at his death I desire the above mentioned property shall be equally divided between my two nieces, Dona E. Smoot and Mary E. Lucas, to be their separate estate free from the use of any husband they may have if either of aforesaid nieces should have no children then her share is to go to the other children of my sister, Elizabeth Ellison."

Testatrix died in the year 1909, a few days after making her will. Her husband survived her. It does not appear when he died, but it was before the death of Mary E. Lucas, in 1927, and Dona E. Smoot in 1938. Neither of those nieces ever had a child. They were the children of testatrix' sister and had two brothers, one of whom had a child when Mrs. McQuown died. A son was later born to the other brother. These grand-nephews are the appellants. Mrs. Smoot's husband, personally and as her executor, is the appellee. The question is whether each niece was devised a fee simple title in one-half of Mrs. McQuown's property upon the death of her husband or was devised a life estate which would have been increased to a fee by giving birth to a child. The circuit court adjudged that a fee simple and absolute title vested in Mrs. Smoot and Mrs. Lucas upon the death of the testatrix' husband, the late Honorable Lewis McQuown.

The construction of the will is not free from difficulty. The chancellor interpreted the condition attached to the devise of the remainder after the death of the testatrix' husband, namely, "if either of aforesaid nieces should have no child," to be equivalent to the frequently used provision for disposition over if the devisee should die without children or die leaving no child. If that was the intent and is the meaning, the construction of the will is proper for there was an intervening estate (life estate in the husband), and a further disposition beyond the nieces (to the other children of testatrix' sister) upon a failure of the condition. Under a well-established rule of interpretation such condition is held to have reference to the death of the second devisee before the termination of the life estate and as that did not occur the nieces became vested with full title. Harvey v. Bell, 118 Ky. 512, 81 S. W. 671, 26 Ky. Law Rep. 381; Rankin v. Rankin, 227 Ky. 169, 12 S. W. (2d) 319; Smith v. Webb, 263 Ky. 26, 91 S. W. (2d) 987.

The appellant's position is in substance that this was a conditional bequest; that it is the same as though testatrix had affirmatively provided that the nieces should have a child born to them in order to get the property absolutely; that what was in testatrix' mind was the having of a child rather than the death of the nieces without children; or, alternatively, if it be regarded that she had in mind their death without children,

then under the peculiar language the condition extended throughout their lifetime. To sustain the argument it is pointed out that part of the estate was family portraits and jewelry and that it was natural for testatrix to want them at least to remain in possession of her own blood and not to go to her husband or be diverted to strangers. If a child should be born to each niece, then he should get the property; if not, her nephews should have it. The difference between a testamentary condition precedent and condition subsequent, with the consequent results, is given in Carroll v. Carroll's Ex'r, 248 Ky. 386, 58 S. W. (2d) 670. If the testamentary clause under consideration be either, the result would seem to be the same for it would give either a conditional fee or a defeasible fee.

Appellants rely upon Slack v. Downing, 233 Ky. 554, 26 S. W. (2d) 497, where the bequest was to a daughter for life, and the ''remainder to such children as she may have in fee simple.'' Since no disposition was made in the event the daughter had no child, it was held that subject to the contingency of her giving birth to a child title in the remainder did not pass to anyone under the will; that the daughter inherited it as testator's sole heir, and that her title was a defeasible fee in the remainder subject to be defeated by her having a child. It does not seem to us that that decision is controlling for there was a specific bequest of the remainder to the child if any should be born. The questionable provision in Mrs. McQuown's will is negative. It follows a specific, complete bequest to the nieces, with the defeating clause beginning with and after it. We think ''if'' in this connection is to be given the meaning of ''in case that'' the nieces have no children. The question is, having no children at what time? As the appellants say, the phrase ''have a child'' is quite often used in the sense of giving birth to a child. The cases of Nickerson v. Hoover, 70 Ind. App. 343, 115 N. E. 588; Radford v. Rose, 178 N. C. 288, 100 S. E. 249; and In re Havesgaard's Estate, 59 S. D. 26, 238 N. W. 130, cited by appellant, pretty well support his contention, the terms of the several wills being such that the courts interpreted them as being bequests on condition of a child being born to the legatee. It is not believed that Mrs. McQuown intended only that in the event each of her nieces had a child she should receive an absolute title, for,

though the child only lived a few minutes, the effect would be the same as if he survived his mother. The purpose, suggested by appellants, to keep the estate in her own blood would thus be defeated. It seems to us the circumstances and relationship of the parties—all of them—afford the more reasonable conclusion in respect to the controversial clause to be that she intended that if either niece should have no child at death, then the property should go to testatrix' nephews. When that conclusion is reached, it is clear that the rule is controlling which construes a bequest to one for life and then to another with an alternate disposition if he should die without issue or a child as meaning if he should die before the first devisee. That rule is founded upon sound reasoning and supported by the partiality of the law for vesting a fee simple title. It is so well imbedded in our law as to constitute a part of every will coming within its orbit. We are of opinion, therefore, that the court correctly interpreted the will as having, under the facts, vested a fee simple title in the nieces.

2. Mrs. Mary E. Lucas, one of the devisees of Mrs. McQuown, lost her husband by death while living in Detroit sometime in 1924. Shortly afterward she wrote a long letter to her sister, Mrs. Smoot. This letter is permeated with loneliness, despair and despondency. In the course of it she said: "If I can just keep up. I don't feel very strong. Have been through with so much. I am not as strong as I was." In the middle of this letter is this sentence: "If I can't live through it and anything happens to me I want you to have what I have." Sometime thereafter Mrs. Lucas returned to her native home to live with her sister. She was killed in an accident in Detroit on January 27, 1927. The foregoing letter was probated as her will by the Barren County Court on February 25, 1927. Mrs. Dona E. Smoot died November 21, 1938, and devised all of her estate to her husband for life with remainder to her nephews. In this suit to settle her estate the court held the probate of the letter as being her will to be effective and final. The appellants maintain that the county court was without jurisdiction, based upon the grounds that the sentence in the letter was only a conditional or contingent bequest and became ineffective and void since the conditions had long ceased to exist, and that Mrs. Lucas was not a resident of Barren County but of Michigan when she met her death.

Perhaps the testamentary sentence should be considered as only a casual statement and not intended to be a will. See Annotations, 54 A. L. R. 920. But at most it was a conditional will. Mrs. Lucas was overwhelmed with grief from which it seemed to her she could not or might no recover. Few there are who have not undergone that trying experience when the heart is torn by grief and the mind ruled by despair. Time is the great healer of our sorrows and our wounds, and Mrs. Lucas did survive that period and live for two years and four months before meeting an untimely death. The happening of the particular event set forth in the paper as the reason for writing it did not occur. Walker v. Hibbard, 185 Ky. 795, 215 S. W. 800, 11 A. L. R. 832. And though according to our opinion the expression of a desire that her sister should have her estate was not effective as a bequest after the condition terminated, nevertheless whether it was or was not a will was a question determinable in the first instance by the county court of Barren County. While at first blush it may seem that if an instrument is ineffective as a lawful will or void as such no court has authority or jurisdiction to probate it, it is not to be overlooked that that is the very power and authority given the county court, namely, to decide whether it is a will or not a will. Stewart v. Sampson, 285 Ky. 447, 148 S. W. (2d) 278. Jurisdiction to determine the question is different if the decedent was not a resident of the county. In such a case the order of probate may be questioned collaterally; otherwise, it is conclusive the same not having been superseded, reversed or annulled. Sections 4849, 4850, Kentucky Statutes; Davies v. Leete, 111 Ky. 659, 64 S. W. 441, 23 Ky. Law Rep. 899; Moore v. Shifflett, 208 Ky. 461, 271 S. W. 551; Howard v. Ramsey, 257 Ky. 704, 78 S. W. (2d) 16.

On the issue of domicile, the greater weight of the evidence supports the finding of the chancellor that Mrs. Lucas was a resident of Barren County when she died. That was her childhood home and was where her people were living. Kentucky was the home of her deceased husband, but he was employed in Detroit when he died. She disposed of most of her things there—if not all of them—and moved back to Glasgow to live with her sister in the room she had occupied before her marriage. She bore a part of the household expenses. Her husband's body had been brought back and buried in Kentucky, and

her expressed wish to be buried here was carried out. She owned property, including her bank account, in Glasgow, and all of her income emanated from it. The appellants testify that she resided in Detroit, but neither of them appears to have seen his aunt for two years before her death and neither had been in Kentucky or Michigan. There is a little evidence that Mrs. Lucas had a room in Detroit but it is not satisfactory. She went back there once in awhile but it seems to have been merely to visit her friends for periods not exceeding four or five weeks.

In the very complicated case of State of Texas v. State of Florida, 306 U. S. 398, 59 S. Ct. 563, 576, 830, 83 L. Ed. 817, 121 A. L. R. 1179, involving the domicile of Edward H. R. Green and the right of four different states to inheritance taxes from his estate, the Supreme Court re-stated the rule that: "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." In doing so the court approved the test for determining domicile laid down in the American Law Institute's Restatement of Conflict of Laws, Section 13, viz:

> "In determining whether a dwelling-place is a person's home, consideration should be given to:
> "1. Its physical characteristics;
> "2. The time he spends therein;
> "3. The things he does therein;
> "4. The persons and things therein;
> "5. His mental attitude toward the place;
> "6. His intentions when absent to return to the place;
> "7. Elements of other dwelling-places of the person concerned.'"

We said in Burr's Administrator v. Hatter, 240 Ky. 721, 43 S. W. (2d) 26, 27:

> "Legal residence is based upon fact and intention; that is, it is to be determined by location of the person and his intention to abandon a former domicile and establish a new one. Intention is the dominant factor and it is to be deduced from the facts in evidence, conjoined with residence or location. * * * A person can, of course, have but one legal residence, and where he had made his abode at a place for so great a length of time as the record shows the

decedent, Burr, stayed in Franklin, Simpson county, that prima facie must be deemed his legal residence. City of Lebanon v. Biggers, 117 Ky. 430, 78 S. W. 213, 25 Ky. Law Rep. 1528; Boyd's Ex'r v. Commonwealth, 149 Ky. 764, 149 S. W. 1022, 42 L. R. A. (N. S.) 580, Ann. Cas. 1914B, 481.''

See, also, Johnson v. Harvey, 261 Ky. 522, 88 S. W. (2d) 42. Under the evidence and these rules we think the court rightly adjudged Mrs. Lucas' domicile to have been in Barren County; consequently, that the county court had jurisdiction to probate the will and that its order is final and conclusive.

Judgment affirmed.