[Civ. No. 28276. First Dist., Div. Four. Feb. 18, 1971.]

AUBREY DUDLEY WILLIAMS et al., Plaintiffs and Respondents, v. CAROLYN LEE WARD et al., Defendants and Appellants.

COUNSEL

Patricia Ann Stoddard for Defendants and Appellants.

Charles W. Edwards, and Stark, Stewart, Simon & Sparrowe for Plaintiffs and Respondents.

## OPINION

**DEVINE, P. J.**—This case presents a question of interpretation of a will: whether the testator in describing children of the life tenant meant to include persons who as adults were adopted by the life tenant. The testator, John Russell, died in 1930, leaving a daughter, Crystal E. Russell, who was 37 years old, single and had no children. The daughter had undergone surgery which made it "questionable" whether she could ever bear children. The testator knew of his daughter's problems and had arranged for and paid for the surgery. In his will, the testator devised real property to his daughter "for and during her lifetime, with remainder over upon the death of said CRYSTAL E. RUSSELL to her children, if any there be, share and share alike." If there were no children, the remainder was left to nine nieces and nephews.

In 1947, Crystal Russell adopted appellants, daughters of a second cousin. They were minors; their ages are not shown to us, but Claudia at least was very young because she was still a minor during litigation in

1964. These adoptees did not live with Crystal, nor did they take her name. She was unmarried, and has remained so. We know nothing more about the relationship of adopter and adoptees towards each other before 1964.

In 1964, there was a sale of 2,228 acres of real property in Merced County for $160,000 pursuant to a stipulated judgment in a partition action which Crystal E. Russell had instituted. By this judgment the down payment of the purchase price was divided this way: $24,000 for costs and attorneys' fees, $44,000 to Crystal E. Russell, $10,000 each for her adopted daughters, and $1,000 in trust for "contingent unborn remaindermen." In 1965 and 1966, there was division, following the agreed judgment, by which Crystal E. Russell received $57,095.39 and each adoptee, $13,155.32. A payment of principal in 1967 has not been divided and remains in escrow pending finality of the present case.

In 1967, Crystal E. Russell, then being 73 years old, adopted respondents by decree of the Superior Court in Alameda County, dated July 11, 1967. We know nothing of respondents except that they were adults. There is no testimony about the motives of the parties, adopter and adoptees. We do know that on February 5, 1968, about seven months after the decree of adoption, respondents filed this action for declaratory judgment in Alameda County. Crystal E. Russell was named a defendant, but she allowed her default to be entered. Respondents asked for a declaration that they were remaindermen under John Russell's will. They contended that their interests as potential remaindermen had not been represented in the Merced County partition suit, and that they were entitled to share in the proceeds of the sale. The trial court found that respondents are "children" of Crystal E. Russell within the terms of John Russell's will, that the interests of possible future remaindermen were not adequately protected in the partition action, and that, therefore, respondents were not bound by the judgment in that action. The court ordered future installment payments to be distributed as follows: interest payments would continue to be paid to Miss Russell; all principal payments would be paid to respondents until they have each received $13,155.32 (the amount already received by appellants). Thereafter, principal payments would be divided equally among Crystal Russell, the appellants, and the respondents. After Crystal Russell's death, the payments would be divided equally among her "children." The $1,000 previously set aside would also be divided among the "children" after Crystal Russell's death.

■ We have concluded that it was not the testator's intent to include adopted adults as remaindermen. Therefore, we need not discuss the subject of adequacy of representation of any interests of respondents in the partition action in respect of finality of the judgment therein (although, as

appears below, the subject has some relevance in reasoning relating to the testator's intent).

Because we are interpreting a will and not a statute of succession, we must endeavor to find the testator's intent, for to do so is the paramount rule of construction of wills. Whatever the rights of inheritance of respondents may be by reason of their adoption, their status under the will of John Russell is to be decided by the answer to the question whether respondents are included among the persons the testator intended to share in his estate. (*Estate of Pierce,* 32 Cal.2d 265, 269 [196 P.2d 1].)

We have as extrinsic evidence of the testator's information and state of mind only the fact that the testator knew that it was unlikely, although possible, that his daughter would bear children. We need not consider whether he intended *any* adopted children, such as appellants who were adopted as minors, to be remaindermen because the partition decree recognizes their status as devisees and this is not challenged in the present case.

But there are considerable differences between prospective adoption (not by the testator himself, but by the life tenant) of minors and of adults. First, it is to be noted that the law of California did not allow the adoption of adults until September 22, 1951 (Stats. 1951, ch. 880, §§ 1, 2, p. 2400; Civ. Code, §§ 221, 227p), 21 years after the testator's death. If the testator, in preparing his will, had asked competent counsel for the full effect of a devise to children of his daughter (or if counsel had given the information), he would have learned that the word "children" includes adoptees when used in statutes of succession (*Estate of Mercer,* 205 Cal. 506 [271 P. 1067]); and perhaps he would have learned from a foresighted counsel that it was likely that the word "children" might include adoptees when that word was used in a will, although the law of this state in that respect would not be announced until more than a quarter of a century later by the decision in *Estate of Stanford,* 49 Cal.2d 120 [315 P.2d 681], in 1957. If the testator had requested, or if counsel had given a more complete exposition of the law, the testator would have learned that the law of California did not permit adult adoptions (*Estate of Taggart,* 190 Cal. 493, 498 [213 P. 504, 27 A.L.R. 1360]). We cannot tell whether the testator actually did turn his mind towards the subject of possible adoptions. What we must do is to endeavor to ascertain what the testator's wishes would be if the subject of adopted adult children were called particularly to his mind. We must assume unless a contrary intent is expressed that his will would be compatible with the general body of the law and the public policy. (*Estate of Heard,* 49 Cal.2d 514, 522 [319 P.2d 637].)

We conclude that it is probable that the testator would not have meant to include all adults who might be adopted by his daughter within the word

"children" and that an interpretation compatible with the body of the law and the public policy of the state at the time of making his will is that which excludes adult adoptees. Our reasons are these:

1) The word "children" ordinarily refers to persons under the age of majority. It is true that section 221 of the Civil Code, as amended in 1951, defines children in the various adoption statutes contained in chapter 2 of division 1, part 3, title 2 relating to "Children by Adoption" as including both minor persons and adult persons. But this is a highly artificial definition which obviously was selected because of the newly created statutory permission for the adoption of adults. Of course, the word "children" had always included persons who had attained majority as the offspring of their natural parents, but the concept of a person's becoming a child of another person or persons after the former had reached the age of majority was unknown to the law of this state until 1951. ■ When the issue is one of construction of a will, the testator's intent and the law at the time of execution governs the interpretation. (*Estate of Gansner,* 222 Cal.App.2d 390, 393 [35 Cal.Rptr. 213]; *Estate of Dillehunt,* 175 Cal.App.2d 464, 467-468 [346 P.2d 245].) If the testator wished to make his will comport with the law at that time, he would not embrace adults later to be adopted as children of his daughter.

2) There is a distinction which the testator, acting sometime prior to 1930, might well have had in mind if he ever thought of the subject of adult adoptions, a subject then unknown to the law of this state. It is that adopted minor children most likely would be closer to family traditions, history and affections than would adult adoptees, and might be expected to regard more gratefully and affectionately the deceased father of their adopting mother as an ancestor and benefactor.[1]

3) Another distinction is that in adopting minors the daughter would become responsible for their support and education; wherefore, if she

[1] Dean Halbach, in an article generally favorable to adoptees, says, nevertheless: "In referring to the 'children of A,' for example, what types of relationships does a transferor have in mind? Rather than thinking of technical, legal relationships, he probably had some vague expectation or general notion concerning a type of actual, personal relationship. He would naturally assume that the legal and personal relationships would coincide, but the legal relationship created by adoption alone would not satisfy his expectation without that special kind of personal involvement which is typically associated with the parent-child relationship. Thus, it is doubtful that an adult adoption fits the pattern a transferor would have had in mind. Obviously, in attempting, in a specific context, to respond to some vague expectation of another person, clear dividing lines are not available. Nevertheless, in formulating new rules of construction to reflect a general preference for equal treatment of natural and adopted children, some provision should be made to insure against the conscious use of adoption to upset a transferor's normal expectations." (Halbach, *The Rights of Adopted Children Under Class Gifts,* 50 Iowa L.Rev. 971, 989.)

should die before these obligations had been fulfilled, the estate, which for some reason the testator did not wish to go completely to the daughter during her lifetime, would be useful for the benefit of the adopted children. When adults are adopted the usual duty of support (as distinguished from that which may arise from extraordinary circumstances) is not assumed by the adopter.

4) Another difference is this: adoption of minors (except in stepparent adoptions) can be effected only following investigation carried on by an agency of the State Department of Social Welfare (Civ. Code, § 226). But in the case of adult adoptions no such investigation is required (Civ. Code, § 227p). One significance of this difference is that the purposes of the adopter may be inquired into when there is a proposed adoption of a minor. If the adoption of a minor is a second or later one, it can be ascertained that the subsequent adoption does not unduly diminish the right to support of earlier adoptees. Moreover, it can then be ascertained that the motive of the adopter is not that of cutting down a remainder which has been left to children. When there is an adult adoption conducted without the investigation, there is opportunity for a life tenant, such as the daughter in this case, to reduce the remainder simply by adoption of willing adults. It is improbable that the testator intended such results. If he had wished to give his daughter power of appointment, he could have done so.

Of course, circumstances may often change so radically as the years go on that a testator who has created a trust or life estate with remainder would have made an entirely different will had he known what the future would bring, and this frequently is so even as to those persons who were the particular objects of the testator's bounty. The conduct of those dearest to the transferor may be such that one could be sure that he would not make the same disposition of his property. But the situation in this case is different. Here, the law itself has been changed so that eventualities created by law as well as by the acts of persons could not have been anticipated by a careful testator. Judicial inquiry must seek the probable intent of the testator.

We are not impressed with respondents' statement that because they have been cut off by the adoption from any right of inheritance from or through their natural relatives, "unless [respondents] are considered as entitled to inherit by, through or from Miss Russell and their adopted relatives, which can only happen by a retroactive application of Civil Code, § 227p and Probate Code, § 257, they will not be allowed to inherit from *anyone*." In the first place, respondents, unlike minor adoptees, were *sui juris* and could make an estimate by calculation of the respective

values of their possible natural inheritance and their possible inheritance through adoption. But besides this, our decision has only to do with the intention of John Russell in the making of his will. We do not deal with the statute of succession. No doubt respondents will inherit from Miss Russell if she dies intestate (the law, however, taking note of the difference between adult and minor adoptions, will regard them as strangers for inheritance tax purposes [Rev. & Tax. Code, § 13310]).

Finally, there is the matter of authorities. There are but few cases on the subject of adopted adults as within classes designated in a will. They are collected in 21 A.L.R.3d 1012, 1042-1043. In *Pennington* v. *Citizens Fidelity Bank & Trust Co.* (Ky. 1965) 390 S.W.2d 671; *Wilson* v. *Johnson* (Ky. 1965) 389 S.W.2d 634; *In re Estate of Comly* (1966) 90 N.J.Super. 498 [218 A.2d 175]; and *In re Freeman's Estate* (1909) 40 Pa.Super. 31, 41, it was held that an adopted child was not within the meaning of the word "child" or "children" as it was used in a will. In *Delaney* v. *First National Bank in Albuquerque* (1963) 73 N.M. 192 [386 P.2d 711], the term "lawful child" of a son included an adopted adult stepdaughter where the testator had changed his will enlarging the expression "without leaving lawful heirs of his body surviving him," to that of "lawful child." This change, it was held, brought the stepdaughter within the class, particularly because the testator had adopted two children himself and was surely aware of the possibility that his son might adopt a child or children. But because of the variations in the terms of the testaments and of the statutes, it would not be profitable to analyze these cases. We must proceed to a discussion of the California case upon which respondents mainly rely, *Estate of Stanford,* 49 Cal.2d 120 [315 P.2d 681].

In the *Stanford* case, three adoptees of a life tenant were held to be persons entitled to share the corpus of a trust as "children" of the lifetime beneficiary, and one of the adoptees was an adult. Respondents contend that this is complete authority to sustain their position. We do not find it to be so. In order to succeed in gaining the corpus of the trust fund upon the death of Amy Hansen, Leland Stanford Junior University had to win on two points: first, that the gift over to Mrs. Hansen's son was a contingent and not a vested remainder and that therefore, since he predeceased his mother, his transfer of his share to a complete stranger to the Stanford family was ineffectual; and second, that the adoption which was effected by Mrs. Hansen after the death of her natural son conferred no rights on the adoptees under the terms of Mrs. Stanford's will. It obviously made no difference to the university whether one of the adoptees was an adult. The existence of a single remainderman who could take would defeat the claims of the university. The opinion of the court, therefore, barely mentions the fact that

one of the adoptees was an adult. There would have been no purpose in discussing the subject of adult adoptions. The transferee of the natural son of Mrs. Hansen had as her purpose not only the defeat of the university's claim, in which she was successful, but also the rejection of the claims of all three adoptees. Here again, the parties did not choose to engage in a contest over the position of the one adult adoptee. Although the subject of adult adoptees is discussed in the minority opinion, this is done by way of illustrating error, as the minority saw it, of including any adoptees as coming within the intended benefaction of the testatrix. Therefore, although an adult adoptee actually did benefit from the decision, the court's opinion focused on other and broader problems than those related to her particular position as an adult.

There is another distinction between this case and *Estate of Stanford.* In that case, there was a single adoption, of a mother and two daughters, all of whom were related to the testatrix, Jane Stanford. In the case before us, there were successive adoptions, as related above, involving the adverse effects by a later adoption on the interests of minor children earlier adopted under the patronage of the court. We do not believe that the testator would have intended the rather bizarre results of the judgment as it stands. If he so intended, he must also be deemed to have intended that any adoptions which the life tenant may make, even after that of the two respondents, will bring in additional persons, even though they be complete strangers, more than forty years after his demise. The judgment should be set aside, and the partition judgment of the court in Merced County should stand.

Rarely do we take a tutorial position in opinions of this court, but we think it appropriate to call attention to lawyers and trust officers who have to do with the drafting and revision of wills and trusts, the possible impact of the adult adoption law on gifts to a class. We do so not for the purpose of urging inclusion or exclusion, but for the purpose of bringing about understanding on the part of transferors. We think it not amiss to suggest to all parties concerned with adult adoptions, including judges, that the effects of adult adoptions on rights of property should be thoroughly explored.

The judgment is reversed, with directions to the superior court to enter judgment in conformity with this opinion.

Rattigan, J., and Christian, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 14, 1971.