[Civ. No. 27137. First Dist., Div. Two. Apr. 16, 1971.]

BERTHA ABRAMOVIC, Cross-complainant and Appellant, v. JOHN F. BRUNKEN et al., Cross-defendants and Respondents.

## COUNSEL

Muller, Pia & Simmons, Robert J. Pia and Robert E. Triebsch for Cross-complainant and Appellant.

Cominos, Shostak & Epstein and Eugene Epstein for Cross-defendants and Respondents.

## Opinion

**DAVID, J.***—Defendant and cross-complainant Bertha Abramovic appeals from a judgment entered in a partition suit decreeing she has no interest in the property involved, to the exclusion of the remaindermen designated in a testamentary trust. The trust was set up under a will executed by Henry F. Brunken on May 1, 1940, which as involved here, provides: "Eighth: I hereby give and bequeath to my son, John Brunken, the sum of Two Thousand and no/100 Dollars ($2000.00). If my said son, John Brunken, remains unmarried, I hereby give and devise to my Trustees hereinafter named a one-fourth (¼) interest in and to all lands owned by me at the time of my death, in trust, under the usual terms and conditions, to pay to my said son the net income during the term of his natural life. In the event that my said son should marry, then and in such event instead of and in place of such trust I give to the children, if any, of said John Brunken, a one-fourth (¼) interest in and to any lands owned by me at the time of my death, subject, however, to any further provisions herein contained and subject further that in the event of the death of my said son, John Brunken, before his children, if any he shall have, shall have reached the age of thirty (30) years, then in such event the interest of the said John Brunken shall go to the said children, in trust, with the usual powers and conditions, until the youngest of said children shall have reached the age of thirty (30) years. In the event that the said John Brunken shall not marry and if married shall have no issue, then it is my will and direction in the event of the death of said John Brunken that the said one-fourth (¼) interest herein mentioned shall go to my heirs at law or their representatives by right of succession." The trial court found that the testator did not intend to include appellant Bertha Abramovic, adopted as an adult long after the testator's death, among the children or issue of John as defined by the will. Her appeal followed.

On March 29, 1941, John Brunken, then aged 48, married recent divorcee Christine Terkelsen. Appellant Bertha, then aged 19, was the daughter of Christine by her former marriage, working as a theater cashier who after the marriage, lived with her mother and stepfather. She married in May 1942, but returned shortly to John and Christine and obtained an annulment. She remained with them until her marriage with her present husband in January 1946 in Pennsylvania, where she has since resided.

The testator was about 74 years old at the time of John's marriage to Christine. Although he remained mentally competent and capable of walk-

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

ing, he became ill and died following surgery five months after the marriage, on August 27, 1941.

Slightly more than 12 years after the testator's death, on October 29, 1953, John legally adopted appellant, who was then 32 years old. Her natural father was still alive at the time of trial. The real property devised by the testator was distributed by final decree dated November 5, 1954. The trial court logically could have inferred that the adoption of Bertha was in the attempt to defeat the remaindermen in the then prospective distribution. John's complaint in the present action for partition of his parcel was filed on March 6, 1968. Appellant filed a cross-complaint seeking a determination that she owns a remainder interest in the property.

■ Under the laws of succession, it now is established that an adopted child has the same legal status as one of the blood. In *Estate of Pierce* (1948) 32 Cal.2d 265, 269 [196 P.2d 1], it is appropriately stated, "In the determination of the rights of an adopted child under a will, the controlling question is not whether the adopted child would inherit from its adoptive parent under the statute of succession, but whether the adopted child is included among the persons the testator intended to share in his estate."

■ The testator's intention is determined by consideration of the terms of the will and the circumstances under which it was made. (*Estate of Russell* (1968) 69 Cal.2d 200, 210 [70 Cal.Rptr. 561, 444 P.2d 353].) Testamentary intention may be determined only as of the date of the will. (*Estate of Turney* (1951) 101 Cal.App.2d 720, 726 [226 P.2d 80].) Ex post facto testimony is irrelevant. ■ The construction given to the will by the trial court, since it is reasonable, will not be disturbed on appeal, though other interpretations might be tenable. (*Estate of Cuneo* (1963) 60 Cal.2d 196, 201 [32 Cal.Rptr. 409, 384 P.2d 1, 7 A.L.R.3d 1132].) So far as the intention of the testator is a matter of fact, it has been decided against the contentions of Bertha Abramovic by the trial court. The intention of the testator is to be given effect. (Prob. Code, § 101.)

John Brunken married after the execution of the will but before the death of the testator. At the time of the execution of the will, Henry F. Brunken had never met appellant. They met after John Brunken's marriage to her mother. She then was aged 19, and was working, to all intents an adult. Henry Brunken died shortly after. It was not until 11 years later, in 1951, that the law was amended to authorize the adoption of an adult. (Civ. Code, §§ 227p, 221.) It is of some significance that John Brunken did not adopt Bertha while she was a minor, nor did he propose to do so until long after she ceased to be a member of his household.

The dispositive phrases of the will to be interpreted are: "In the event

that my said son should marry . . . I give to the children, if any, of said JOHN BRUNKEN . . . in the event of the death of my said son . . . before his children, if any he shall have. . . . In the event that the said JOHN BRUNKEN . . . if married shall have no issue . . . the said one-fourth (¼) interest herein mentioned shall go to my heirs at law or their representatives by right of succession."

The judgment decreed that "BERTHA ABRAMOVIC is not the issue of JOHN BRUNKEN under the will of HENRY F. BRUNKEN, deceased." The testator obviously was considering "children" coming into being from the matrimonial status. In common usage, to speak of one "having children," biological children are meant. (Cf. *Ellison* v. *Smoot's Adm'r.* (1941) 286 Ky. 768 [151 S.W.2d 1017, 1019]; *Nickerson* v. *Hoover* (1917) 70 Ind. App. 343 [115 N.E. 588, 590-591].)

The trial court was justified in interpreting these provisions to show Henry F. Brunken contemplated "children" and "issue" to relate to biological matrimonial descendants.

In replacing former Civil Code sections 1334 and 1335, Probate Code section 108 in listing designations pertinent to testamentary dispositions specifically omitted "issue."

As of 1940, when he made his will, neither Henry F. Brunken nor his attorney was chargeable with knowledge of the expanded concepts and definitions embodied in the dissent of Carter, J. in *Estate of Pierce, supra,* and adopted in *Estate of Stanford* (1957) 49 Cal.2d 120 [315 P.2d 681], and *Estate of Heard* (1957) 49 Cal.2d 514 [319 P.2d 637]. He had no knowledge that some 12 years after his death, Bertha Abramovic would become an adopted daughter of John Brunken, nor yet that in 1951, it would become legal to adopt an adult. As of the time the will was executed, aside from code provisions relating to intestate succession, "issue" commonly meant those who were "of the blood"; the very word "issue" pertained to physical birth, and excluded those who acquired the name or character of children by marriage or adoption unless there was a clear indication to the contrary. (48 C.J.S. pp. 781-782; *In re Kay's Estate* (1953) 127 Mont. 172 [260 P.2d 391, 394]; *In re Nicol's Trust* (1956) 3 Misc.2d 898 [148 N.Y.S.2d 854, 866], also at (1963) 39 Misc.2d 674 [241 N.Y.S.2d 775, 776]; cf. *Schaefer* v. *Merchants National Bank of Cedar Rapids* (Iowa 1968) [160 N.W.2d 318, 323].)

A later adopted statute—and a fortiori, a later judicial doctrine—is not controlling. (Cf. *In re Nicol's Trust, supra,* 241 N.Y.S.2d at p. 778.)

It is said in *Estate of Heard, supra,* 49 Cal.2d at pages 521-522, that in determining whether the term "lawful issue" includes adopted children,

the policy of the adoption statutes may be considered. Such a doctrine, however, is based upon a public policy to equate the children of the blood of the adopting parents, and the adopted child, for obvious reasons. There is no such compelling force, in determining the rights of the adopted child, in reference to the ancestors of the adopting parents, and their relatives, of whom the adopted person was not an heir at the time the will was executed, nor when the estate was distributed. (*Estate of Calhoun* (1955) 44 Cal.2d 378, 385 [282 P.2d 880]; *Schaefer* v. *Merchants National Bank of Cedar Rapids, supra,* 160 N.W.2d 318.)

In this case, however, there is an additional question in respect to the remaindermen, who are "my heirs at law or their representatives by right of succession." Bertha by virtue of her adoption is an heir at law of her adoptive father, John Brunken,[1] and would take by right of succession anything he retained from Henry F. Brunken. But John Brunken is only to receive income from the interest partitioned to him for his natural life, and there is nothing of the corpus to which Bertha could succeed upon his death.

As pertinent to the problem before us, we refer to *Williams* v. *Ward* (1971) 15 Cal.App.3d 381 [93 Cal.Rptr. 107],[2] a somewhat similar case, in which the testamentary intent was held not to include a "child" by adult adoption and the contrary determination of the trial court was reversed. Quoting from that case, "Finally, there is the matter of authorities. There are but few cases on the subject of adopted adults as within classes designated in a will. They are collected in 21 A.L.R.3d 1012, 1042-1043. In *Pennington* v. *Citizens Fidelity Bank & Trust Co.* (Ky.App. 1965) 390 S.W.2d 671; *Wilson* v. *Johnson* (Ky. App. 1965) 389 S.W.2d 634; *In re Estate of Comly* (1966) 90 N.J. Super. 498 [218 A.2d 175]; and *In re Freeman's Estate* (1909) 40 Pa. Super. 31, 41, it was held that an adopted child was not within the meaning of the word 'child' or 'children' as it was used in a will. In *Delaney* v. *First National Bank in Albuquerque* (1963) 73 N.M. 192 [386 P.2d 711], the term 'lawful child' of a son included an adopted adult stepdaughter where the testator had changed his will enlarging the expression 'without leaving lawful heirs of his body surviving him,' to that of 'lawful child.' This change, it was held, brought the stepdaughter within the class, particularly because the testator had adopted two children himself and was surely aware of the possibility that his son might adopt a child or children. But because of the variations in the terms of the testaments and of the statutes, it would not be profitable to analyze

---

[1] No doubt appellant will inherit from John Brunken if he dies intestate. (The law, however, taking note of the difference between adult and minor adoptions, will regard her as a stranger for inheritance tax purposes. (Rev. & Tax. Code, § 13310.))

[2] Hearing denied by the Supreme Court April 14, 1971.

these cases. We must proceed to a discussion of the California case upon which respondents mainly rely, *Estate of Stanford,* 49 Cal.2d 120 [315 P.2d 681].

"In the *Stanford* case, three adoptees of a life tenant were held to be persons entitled to share the corpus of a trust as 'children' of the lifetime beneficiary, and one of the adoptees was an adult. Respondents contend that this is complete authority to sustain their position. We do not find it to be so. In order to succeed in gaining the corpus of the trust fund upon the death of Amy Hansen, Leland Stanford Junior University had to win on two points: first, that the gift over to Mrs. Hansen's son was a contingent and not a vested remainder and that therefore, since he predeceased his mother, his transfer of his share to a complete stranger to the Stanford family was ineffectual; and second, that the adoption which was effected by Mrs. Hansen after the death of her natural son conferred no rights on the adoptees under the terms of Mrs. Stanford's will. It obviously made no difference to the university whether one of the adoptees was an adult. The existence of a single remainderman who could take would defeat the claims of the university. The opinion of the court, therefore, barely mentions the fact that one of the adoptees was an adult. There would have been no purpose in discussing the subject of adult adoptions. The transferee of the natural son of Mrs. Hansen had as her purpose not only the defeat of the university's claim, in which she was successful, but also the rejection of the claims of all three adoptees. Here again, the parties did not choose to engage in a contest over the position of the one adult adoptee. Although the subject of adult adoptees is discussed in the minority opinion, this is done by way of illustrating error, as the minority saw it, of including any adoptees as coming within the intended benefaction of the testatrix. Therefore, although an adult adoptee actually did benefit from the decision, the court's opinion focused on other and broader problems than those related to her particular position as an adult.

"There is another distinction between this case and *Estate of Stanford.* In that case, there was a single adoption, of a mother and two daughters, all of whom were related to the testatrix, Jane Stanford." (Pp. 387-388.)

The judgment of the trial court is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied May 14, 1971, and appellant's petition for a hearing by the Supreme Court was denied June 9, 1971.