63 Cal.App.3d 1 (1976)
133 Cal. Rptr. 500
Estate of MADELEINE L. MOULTON, Deceased.
BEATRICE B. MORSE et al., Claimants and Appellants,
v.
PAMELA BEDDOE, Claimant and Respondent.
Docket No. 14618.
Court of Appeals of California, Fourth District, Division One.
October 22, 1976.
*4 COUNSEL
Glenn, Wright, Jacobs & Schell and James L. Welch for Claimants and Appellants.
Hunter & Ryan and Daniel B. Hunter for Claimant and Respondent.
OPINION
AULT, J.
Eliot Beddoe was the income beneficiary of a testamentary trust under a will executed by his mother, Madeleine L. Moulton, on July 24, 1923. After Eliot's death in 1973, the trustee petitioned the probate court for instructions concerning the distribution of the trust corpus. The court ordered the trust property distributed to Pamela Beddoe as the surviving "lawful issue" of Eliot, who had adopted her as an adult in 1969.
The alternate remaindermen under the will, entitled to take the property in the event Eliot died leaving no widow and no surviving "lawful issue," are Beatrice B. Morse, Japsay Lockett Sears, Sally Cudlip, Marion Franzen, Howard Potter and Stephen Potter (respectively the daughter, the nephew, and the issue of stepsons of the testatrix). They contend Pamela was not "lawful issue" as that term was used in the will.
Few facts are in dispute. Mrs. Moulton's will was drawn by a competent, duly licensed, California attorney. When the will was executed in 1923, there was no statutory procedure in California for the adoption of an adult. However, adult adoptions were allowed in at least 13 other states, including New York, Pennsylvania, Massachusetts and Texas. Not until the enactment of Civil Code section 227p in 1951 could the adoption of an adult be accomplished in California.
The testatrix was married three times and had two children by her first marriage: Eliot Beddoe and Beatrice B. Morse. It appears that Eliot was inept at handling money and was considered by his mother to be a wastrel. The testatrix had acquired her wealth from her second husband, Potter, who himself had two children by a former marriage: Jack Potter *5 and Rowland Potter. When she executed the will, she was married to Everett H. Moulton.
Under the will Beatrice received a certain share of the residue outright when she attained the age of 40, but the share allocated to Eliot was placed in trust, giving him the income for life but no power to invade the corpus and no power of appointment. To provide for disposition of the corpus and accumulated income on Eliot's death Paragraph Third of the will set out four alternatives:
(1) If Eliot should leave no widow but leave lawful issue, the property was to be distributed to such issue, their heirs and assigns, share and share alike;
(2) If Eliot should leave both a widow and surviving lawful issue, the property was to be distributed one-half to the widow, her heirs and assigns, and one-half to the lawful issue, share and share alike;
(3) If Eliot should leave a widow but no surviving lawful issue, the property was to be distributed to the widow, her heirs and assigns;
(4) If Eliot should die leaving no widow and no surviving "lawful issue," then the trust was to continue, giving Beatrice and Mr. Moulton each one-half of the income for life, and on their deaths, the principal was to be distributed to the two former stepsons and the brother of the testatrix.
Paragraph Fourth of the will stated: "All distributions to the lawful issue of any said children shall be per stirpes and not per capita, and the children of any deceased child or grandchild shall take the share that their parent would have received if living."
When the testatrix died in 1929, Eliot was unmarried and without children, and there was no person then in existence who qualified as his "lawful issue." He later married and divorced five wives but had no natural children. In 1939 he married the mother of respondent Pamela, then 10 years old. During the 16 years that marriage lasted, Eliot treated Pamela as his own daughter and often asked her if she would like him to adopt her, and other relatives accepted her as one of the family. Eliot adopted Pamela in 1969 in San Diego County (Sup. Ct. No. A-11811). By then he was 78 years old and living in a convalescent home, and she was *6 40. The following year he married his fifth wife but later obtained a divorce. He was unmarried when he died on December 5, 1973. There was evidence Eliot told his fifth wife he had adopted Pamela to keep his sister Beatrice from getting their mother's property.
On this appeal from the order instructing the trustee to distribute the corpus of the trust to Pamela, the issue is the proper interpretation of the words "lawful issue" as used by Madeleine Moulton in her will. Appellants contend she intended to exclude adult adoptees because adult adoptions were not possible in California during her lifetime. They maintain Eliot's adoption of Pamela after she became an adult was an attempt to rewrite the will and defeat the intent of the testatrix. They further contend the court's findings do not support its conclusions of law and its order, and therefore a reversal is required.

DISCUSSION
(1) The paramount rule in the construction of wills, to which all other rules must yield, is that the intention of the testator as expressed in the will must be given effect as far as possible (Prob. Code, § 101; Estate of Russell, 69 Cal.2d 200, 205-206 [70 Cal. Rptr. 561, 444 P.2d 353]). (2) Where a will has been drafted by one skilled in the law, it may be assumed that technical legal terms have been used in their technical legal sense (Prob. Code, § 106, formerly Civ. Code, § 1327; Estate of Bourn, 25 Cal. App.2d 590, 595 [78 P.2d 193]). (3) Unless the will expresses a contrary intent, the court must also assume the will was intended to be compatible with existing statutes, case law and public policy (Estate of Heard, 49 Cal.2d 514, 521-522 [319 P.2d 637]).
(4a) When the testatrix in this case executed the will her attorney prepared for her in 1923, Civil Code section 1334 stated: "[A] testamentary disposition to `heirs,' `relations,' `nearest relatives,' `representatives,' `legal representatives,' `personal representatives,' or `family,' `issue,' `descendants,' `nearest' or `next of kin' of any person, without other words of qualification, and when the terms are used as words of donation, and not of limitation, vests the property in those who would be entitled to succeed to the property of such person, according to the provisions of the Title on Succession, in this Code." (Italics added.)[1] In addition, it had been *7 established by California case law that the word "issue" included both adopted and natural children for purposes of inheritance (In re Newman (1888) 75 Cal. 213, 219 [16 P. 887]).
Thus at the time the will was executed, a testamentary disposition to "lawful issue," by statutory definition of that term (Civ. Code, § 1334), vested the property in the person or persons entitled to succeed under the laws of intestacy, and California case law had established that adoptive, as well as natural claimants, were entitled to succeed (Wells Fargo Bank v. Huse, 57 Cal. App.3d 927, 935 [129 Cal. Rptr. 522]). In leaving a gift to the "lawful issue" of Eliot, the testatrix must be presumed to have been aware of and to have intended the legal consequences which flowed from the use of that term unless she expressed a contrary intent in the will. By failing to do so, she, in effect, made Civil Code section 1334 and the statute of succession a part of her will (Estate of Watts, 179 Cal. 20, 22 [175 P. 415]).
The gift to "lawful issue" was a gift to a class, and since there was no one in existence who fit that description when the testatrix died, the interest given the class was a contingent remainder. The gift was in fact subject to two conditions: first, that Eliot acquire "lawful issue," and second, that one or more members of that class survive him. Accordingly, the share of each member of the class was not determinable until Eliot's death. (Former Civ. Code, § 1337, now Prob. Code, § 123; Estate of Ghiglia, 42 Cal. App.3d 433, 438 [116 Cal. Rptr. 827]; Fuller v. Fuller, 229 Cal. App.2d 532, 537 [40 Cal. Rptr. 393].)
Having concluded the words chosen by the testatrix designated the remaindermen who would take the trust corpus upon Eliot's death as the person or persons who would succeed to his property under the laws of intestacy, we are confronted with the pivotal question of whether the laws of succession which existed in the testatrix' time, or those which were in existence at the time of Eliot's death, are applicable. Apparently this precise question has not been answered in California. In other jurisdictions, however, when a will has left a remainder to the "heirs" of a life tenant, the majority of courts have held the statute should be applied as of the time of the life tenant's death. (See 80 Am.Jur.2d, Wills, § 1441; 96 C.J.S., Wills, § 695(5)e; also see Annot. at 139 A.L.R. 1107, 1111 et seq.) Taking a similar view, the Restatement of Property states in section 308: "When a limitation is in favor of the `heirs,' `heirs of the body,' `next of kin' or `relatives' of a designated person, or in favor of *8 other groups described by words of similar import, and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances." (Rest., Property, § 308, p. 1706.) This section of the Restatement has been cited with approval in Estate of Miner, 214 Cal. App.2d 533, 540 [29 Cal. Rptr. 601], and Estate of Liddle, 162 Cal. App.2d 7, 18 [328 P.2d 35].
(5) The applicable rule is stated in Liddle: "`Normally, when a gift has been made to the "heirs" or "next of kin" of a named individual, the donor has said in effect that he wants the property distributed as the law would distribute it if the named person died intestate. Accordingly, the normal time for applying the statute of descent or distribution is at the death of the named individual. This is, however, merely a rule of construction, and if the testator or grantor manifests an intention that the statute be applied either at an earlier or a later time, such intention will be given effect.'" (Estate of Liddle, supra, 162 Cal. App.2d 7, 19.)
It is not significant that the terms used in the above quotation were "heirs" and "next of kin" as distinguished from the words "lawful issue" used in the will under consideration here. All three terms were equated in Civil Code section 1334 which specifically declared a testamentary disposition to any of them vested the property in those who were entitled to take under the law of succession. (Wells Fargo Bank v. Huse, supra, 57 Cal. App.3d 927, 935.)[2] (4b) Because adults were adoptable, and entitled to inherit from their adopting parents in 1973 (see Civ. Code, §§ 221, 228), the trust corpus was properly distributed to Pamela Beddoe as the "lawful issue" of Eliot at the time of his death.
Nothing expressed in the will suggests the testatrix would have wished any different result. The fact Eliot's widow (had he left one and no lawful issue) would have taken the entire remainder under the will shows *9 she did not intend to reserve the property for blood relatives, either her own or Mr. Potter's.
Appellants contend California cases have established that the phrase "lawful issue" as used by a pre-1951 testator excludes adult adoptees. They cite Abramovic v. Brunken, 16 Cal. App.3d 719 [94 Cal. Rptr. 303], Williams v. Ward, 15 Cal. App.3d 381 [93 Cal. Rptr. 107], and Estate of McCormack, 2 Cal. App.3d 492 [82 Cal. Rptr. 651]. The cases are not in point and thus not controlling. The critical date is not 1951 but 1931, the year the word "issue" was deleted when Civil Code section 1334 became Probate Code section 108. In each of the cases cited by appellants, Civil Code section 1334 was inapplicable. In both the Abramovic and McCormack cases dispositions were made which depended upon the meaning of the word "issue" but the wills were executed after the 1931 change in the statute. Williams v. Ward, supra, 15 Cal. App.3d 381, involved a pre-1931 will but the devise was to "children," a word never on the statutory list contained in Civil Code section 1334.
There is no merit to appellants' contention that Civil Code section 1334 does not apply because the testatrix used the words "lawful issue" as words of limitation, and not of purchase. The words "lawful issue" are not used in the will to denote the duration of Eliot's estate in the property, but rather to designate the person or persons who are to take the remainder upon Eliot's death. Hence they are words of purchase or donation and not of limitation (Prob. Code, § 108, formerly Civ. Code, § 1335; Black's Law Dict. (4th ed.) pp. 1077, 1399; Dickey v. Walrond, 200 Cal. 335, 340-342 [253 P. 706]).
Appellants argue Civil Code section 1334 is inapplicable because Paragraph Fourth of the will shows the testatrix used the word "issue" to mean "children." We reject the suggestion. The only purpose of Paragraph Fourth was to assure that any distribution to "lawful issue" under Paragraph Third would be "per stirpes" rather than "per capita," and then to illustrate the meaning of the term "per stirpes" in layman's language. In both paragraphs the term "lawful issue" was used as a technical term which had a statutory definition by virtue of Civil Code section 1334.
(6) Contrary to appellants' final contention, reversal is not required because the court, despite their request, failed to make a finding concerning the meaning the testatrix intended the term "lawful issue" to *10 have. No extrinsic evidence was introduced bearing on the testatrix' intent, and consequently there was no conflicting evidence on the issue. Under these circumstances, construction of the will to ascertain intent is solely a judicial function, and an appellate court can make its own independent interpretation of the document (Estate of Russell, supra, 69 Cal.2d 200, 213; Parsons v. Bristol Development Co., 62 Cal.2d 861 [44 Cal. Rptr. 767, 402 P.2d 839]). Accordingly, no finding on the issue of intent was required and no prejudice resulted from the lack of one.
The order is affirmed.
Brown (Gerald), P.J., and Coughlin, J.,[*] concurred.
NOTES
[1] In 1931, eight years after the will in question was executed, Civil Code section 1334 was transferred to the Probate Code, becoming section 108, and the word "issue" was deleted.
[2] Except for the fact it involved minor adoptees, Wells Fargo Bank v. Huse, supra, 57 Cal. App.3d 927, is remarkably similar to this case. To the extent the last paragraph in the opinion could be taken to indicate the result might have been different had an adult adoptee been involved, we think it important to point out that the trial court in this case rejected appellants' requested finding that Eliot's "motive for adopting Pamela Beddoe was to defeat the remainder interest granted to his sister, Beatrice B. Morse, and others in the trust created by the Will of Madeleine L. Moulton."
[*] Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.