[Civ. No. 21109. Fourth Dist., Div. Two. Apr. 7, 1980.]

Estate of CAROLINA B. PITTMAN, Deceased.
SECURITY PACIFIC NATIONAL BANK, as Trustee,
Petitioner and Respondent, v.
GEORGE WILLIAM GORIS et al., Claimants and Respondents;
SAMUEL JAMES TUFFREE et al., Objectors and Appellants.

COUNSEL

Marjorie Mize LeGaye, Launer, Chaffee, Ward & Orman, Robert E. Ward, L. Richard Rawls, Alvin W. Beardsley, Howser, Gertner & Brown and David L. Sanner for Objectors and Appellants.

No appearance for Petitioner and Respondent.

Edward H. Stone for Claimants and Respondents.

---

**OPINION**

**TAMURA, J.**—This appeal involves the right of adult adoptees to take under a testamentary class gift made under a will executed in 1914 to the "child" or "children" of the adopting parents.

Carolina B. Pittman (decedent, testatrix) died in 1915 leaving a will executed in 1914 which was probated in the Superior Court of Orange County. The decree of final distribution determined that decedent left the following heirs:

"R. M. Pittman, her surviving husband, aged about forty-seven years; Frederick B. Tuffree, son, aged about forty-seven years; Juanita C. Yorba, daughter, aged about forty-six years; John C. Tuffree, son, aged about thirty-nine years; Henry D. Tuffree, son, aged about thirty-six years; Marquita R. O'Brien, daughter, aged about thirty-three years; Samuel James Tuffree, son, aged about twenty-six years; Nellie A. Lloyd, daughter, aged about forty-one years; and Carolina Jackmon Pittman, a grand-child and adopted daughter, aged about fifteen years."

The decree distributed the estate in accordance with the provisions of the will.[1] To her adopted daughter who was also her granddaughter (Carolina Jackmon Pittman) decedent bequeathed a piece of real estate to be held in trust for her until she reached the age of 30, at which time the trust would terminate and the title vest in her. After certain specific bequests, decedent left the residue of her estate in trust to her youngest son for the benefit of all her children (with the exception of the adopted daughter) under the following terms: "(a) To hold, manage, control and cultivate said property, and to receive the rents, issues and profits therefrom.

"(b) To pay said rents, issues and profits, after deducting the necessary expenses and costs of maintaining and cultivating said property,

---

[1] The provisions of the will which are in question are set forth in the decree of final distribution, which is part of the record on this appeal.

and of the administration of this trust, to Frederick B. Tuffree, son of said deceased, 13/84ths thereof; to Juanita C. Yorba, daughter of said deceased, 13/84ths thereof; to John C. Tuffree, son of said deceased, 13/84ths thereof; to Henry D. Tuffree, son of said deceased, 13/84ths thereof; to Marquita R. O'Brien, daughter of said deceased, 13/84ths thereof; to Samuel James Tuffree, son of said deceased, 13/84ths thereof and to Nellie A. Lloyd, daughter of said deceased, 6/84ths thereof.

"(c) Upon the death of any of my said children, then said income herein provided for such child of mine so dying, shall be paid to the child or children of such child of mine so dying; and if such child of mine so dying shall leave no children surviving, then the share of such income of said child of mine so dying shall be divided equally among my children then living and the children of my deceased children, taking per stirpes. It is provided, however, that upon the death of the last survivor of my said children, this trust shall immediately cease and terminate, and the title to the said property, and the said property, so held in trust, shall immediately pass to and vest in the children of such children of mine, such children of my children taking per stirpes, in the same proportions as their ancestor the income from said trust, hereunder."

All of decedent's children are now deceased except Samuel James Tuffree. Frederick B. Tuffree, Juanita C. Yorba, and Marquita R. O'Brien died and left issue who have been determined to be beneficiaries of the income and remainder interests under decedent's will. Henry D. Tuffree and John C. Tuffree died without leaving children. Nellie A. Lloyd died leaving one child, Hubert B. Lloyd, who received Nellie's share of the trust income until his death in 1959. Around 1953, Hubert B. Lloyd adopted Edward Neal Goris and George William Goris who were then adults aged approximately 31 and 33 years, respectively. Neither Edward nor George Goris has ever received any income from their adoptive father's share of the trust established by decedent's will.

In 1976, pursuant to the trustee's request for instructions, the court interpreted the will to include great-grandchildren of the decedent as beneficiaries under the trust. In 1978, the trustee petitioned for instructions as to whether great-grandchildren by adoption (George and Edward Goris) should share as income beneficiaries and remaindermen under the trust. The matter was heard and submitted on the petition and written and oral arguments by the interested parties. Following

submission, the court rendered its intended decision that George and Edward Goris, and any others in their same class, are entitled to share as income beneficiaries and remaindermen of the trust and a signed order was filed so instructing the trustee. Findings were neither requested nor made. The other beneficiaries of the trust appeal from the order.

Appellants' sole contention is that Edward and George Goris and others of their class should not take under decedent's will because decedent did not intend to include adult adoptees within the class of "children" or "children of...children" under the trust created by her will. They argue that since it was not legal to adopt adults in California when decedent executed her will, she could not have intended that adults adopted 40 years after her death should benefit from her estate as "children" of her grandchild.

In the ensuing analysis we have concluded that as to wills executed before adult adoptions became valid in California, an adult adoptee generally is not entitled to take under a gift to "children" or "children of...children" but that an exception should be recognized where the adoptee had been taken into the adoptive parents' home as a minor and reared by them. Inasmuch as the record before us fails to show that the adult adoptees came within the exception, we have decided that the order must be reversed and the matter remanded for further proceedings to determine whether or not the exception is applicable.

## DISCUSSION

█ It is well established that a will is to be construed in keeping with the intent of the testator at the time he or she executed the will and that such construction depends upon the terms of the will and the circumstances of its execution. (E.g., *Estate of Heard* (1957) 49 Cal.2d 514, 522 [319 P.2d 637]; *Estate of Pierce* (1948) 32 Cal.2d 265, 268 [196 P.2d 1].) █ This rule of construction holds true even though testator may not have indicated an actual intention with regard to possible exigencies which might arise long after the execution of the testamentary document and though no extrinsic evidence may exist from which to infer testator's intention. (See Halbach, *The Rights of Adopted Children Under Class Gifts* (1965) 50 Iowa L.Rev. 971, 972, 974-975.) In such instances, courts take into account the general body of law and public policy in existence at the time the testamentary document was executed, including judicial decisions, intestacy succession laws, and other statutes, and impute knowledge of this law and policy to

the testator. (E.g., *Estate of Heard, supra*, 49 Cal.2d 514, 522; *Estate of Cox* (1970) 8 Cal.App.3d 168, 189-190 [87 Cal.Rptr. 55]; Halbach, *supra*, at pp. 974-975.)

Appellants, invoking the established convention that the testator is charged with knowledge of the law and policy prevailing at the time of the testamentary execution, argue that decedent clearly did not intend to include *adult* adoptees among the class "children of...children" which she established as residuary beneficiaries under the trust. They point out that since testatrix had herself adopted a child it may be inferred that she was familiar with the adoption laws and was aware at the time she executed her will that adult adoptions were not then recognized in California. Such adoptions did not become legal until 36 years after testatrix' death. (Civ. Code, § 221, Stats. 1951, ch. 880, § 1, p. 2400.) Consequently, appellants maintain decedent could not have contemplated that Edward and George Goris, who were adopted by her grandson when they were in their 30's in 1953, should take as income and remainder beneficiaries of the trust established by decedent's will.

Two cases decided by the First District Court of Appeal squarely confront the issue of inclusion of adult adoptees as beneficiaries of a will executed before adult adoptions became legal in this state: *Williams* v. *Ward* (1971) 15 Cal.App.3d 381 [93 Cal.Rptr. 107] (hg. den.) and *Abramovic* v. *Brunken* (1971) 16 Cal.App.3d 719 [94 Cal.Rptr. 303] (hg. den.). In *Williams*, the testator died in 1930, leaving a life estate to his daughter and the remainder to her "children" upon her death. The life tenant adopted minor children of a second cousin in 1947 and in 1967, 37 years after her father's death, she adopted two adults who were apparently strangers to the family. The court held that those persons who were adopted as minors could take under decedent's will, while those adopted as adults could not. In *Abramovic*, testator executed a will in 1940 leaving to his son a life estate with a remainder over to the son's "children." Shortly before the son's death in 1954, the son adopted his 32-year-old stepdaughter. There was evidence that in 1941 when the son married the stepdaughter's mother, the stepdaughter was 19 years of age, already working and contemplating marriage—in short, functioning as an adult. (*Id.*, 16 Cal.App.3d at p. 722.) Relying upon *Williams*, the court held that the adult adoptee owned no remainder interest in the property. In *Williams* and *Abramovic*, the court reasoned that the testator who executed his will before adult adoption was legalized could not be charged with the knowledge that his estate might someday pass to a person adopted as an adult and thus would not

have meant to include such person in his will by use of the term "children." (*Abramovic v. Brunken, supra*, 16 Cal.App.3d 719, 723; *Williams v. Ward, supra*, 15 Cal.App.3d 381, 384-385.[2])

In *Williams*, the court lists a number of public policy reasons for excluding adult adoptees from testamentary dispositions executed before 1951. The most persuasive of these, in our opinion, is the court's observation that "adopted minor children most likely would be closer to family traditions, history and affections than would adult adoptees, and might be expected to regard more gratefully and affectionately the deceased father of their adopting mother as an ancestor and benefactor." (*Williams v. Ward, supra*, 15 Cal.App.3d 381, 385, fn. omitted.) This policy reason is persuasive precisely because it fits the pattern of actual personal relationships a testator most likely would have had in mind in making a class designation. As Professor Halbach explains, in the absence of a statute establishing a public policy favoring adult adoptions such as the 1951 amendment to Civil Code section 221, the testator's "intention" is probably best safeguarded through a construction limiting the inclusion of adopted children in a class designation of "children" to those children who entered the home as minors and were reared and educated as part of the family by the adoptive parents. (Halbach, *supra*, pp. 990-991; see also ten Broek, *California's Adoption Law and Programs* (1955) 6 Hastings L.J. 261, 275-282, discussing the "family experience and contact" theory.) Professor Halbach styles this construction, which he urges as a replacement for the "stranger-to-the-adoption" rule found in some jurisdictions, the "loco parentis" rule.

■ We agree with the First District that generally the exclusion of adult adoptees from class designations of "children" and "children of

---

[2]In *Williams*, the reviewing court noted that there were but few cases in other jurisdictions on the subject of the inclusion of adult adoptees in classes designated in a will and that these offered little guidance because of the "variations in the terms of the testaments and of the statutes." (*Williams v. Ward, supra*, 15 Cal.App.3d 381, 387; see cases cited therein.) The court then turned to an analysis of *Estate of Stanford* (1957) 49 Cal.2d 120 [315 P.2d 681], in which our Supreme Court held that a woman legally adopted as an adult in New York in 1924 might take under a will executed in California in 1903. In *Stanford*, the adult and her two minor children were adopted in the same New York proceeding by a niece of the testatrix. The *Ward* court was of the opinion that *Stanford* never really focused on the issue of adult adoption since it was occupied with the broader problem of contingent and vested remainders and since appellant university had no reason to raise the issue. (*Williams v. Ward, supra*, 15 Cal. App.3d 381, 387-388.) The court also stressed that *Stanford* involved a single adoption of "a mother and two daughters, all of whom were related to testatrix," rather than adults who were complete strangers to the testator. (*Williams v. Ward, supra*, 15 Cal. App.3d 381, 388.)

...children" established in pre-1951 wills probably best comports with the inferred intention of the testator, but that an exception ought to be recognized as to adult adoptees who had actually been taken into the adoptive parent's home and family as minors and who were reared by the adoptive parent in "loco parentis." (See generally, ten Broek, *supra*, 6 Hastings L.J. 263-265, which suggests that a significant percentage of adult adoptions are those in which stepparents who have parented children from an early age either learn belatedly of the possibility of legally adopting the stepchild or were prevented from doing so earlier by a nonconsenting biological parent.) The exception would most closely accord with the pattern of personal relationships a testator would envision as coming within the class designations and thus be in keeping with the intent of the testator at the time the testamentary document was executed. Adult adoptees coming within the exception should therefore be deemed to come within the class unless it is shown that the purpose of the adoption was to diminish or defeat the income and remainder interests of other beneficiaries "'for purposes of financial gain or as a spite device.'" (Halbach, *supra*, at p. 988, quoting Oler, *Construction of Private Instruments Where Adopted Children Are Concerned* (1945) 43 Mich.L.Rev. 901, 938; see *Estate of Stanford, supra*, 49 Cal.2d 120, 142; *Abramovic v. Brunken, supra*, 16 Cal.App.3d 719, 722; *Williams v. Ward, supra*, 15 Cal.App.3d 381, 385, fn. 1.)

In the case at bench, there was no evidence concerning the past relationship between the adopting parent and the adoptees, the motive for the adoption, or other circumstances surrounding the adoption. All that is shown by the petition for instructions was that the men were adopted as adults. In the reporter's transcript of the hearing below, however, we note that in respondents' counsel's oral argument, he states that the adoptees were stepchildren of Hubert Lloyd; that they were taken into his home in their early teens when Lloyd married their mother; that they were reared in the Lloyd home, left for the service, returned to the home after the service and left on the occasion of their marriages. There also appears to be acquiescence on the part of one of appellants' attorneys that the represented state of affairs did exist. Counsel's argument, however, is not evidence in the case and cannot be relied upon to support the trial court's order.

█ We conclude that on the present record, the court erred in including Edward and George Goris as income and remainder beneficiaries of the estate of Carolina B. Pittman and that the order should be reversed. We further conclude, however, that on remand respondents

Edward and George Goris should be afforded the opportunity to establish, if they can, that they come within the exception we have delineated.

The order is reversed and the case is remanded for further proceedings in accordance with the views expressed herein.

Gardner, P. J., and Kaufman, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied June 18, 1980. Mosk, J., was of the opinion that the petitions should be granted.